UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH DAVIDSON,<br><br>   Plaintiff,<br><br>v.<br><br>CORNERSTONE NETWORK, INC.;<br>and DOES 1 to 10,<br><br>   Defendants. | Case No. 2:23-cv-00485-WLH-KSx<br><br>**ORDER ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND REQUEST TO AFFIX FEES [17]** |

  Before the Court is Plaintiff Kenneth Davidson's Motion for Default Judgment (the "Motion") against Defendant Cornerstone Network, Inc. ("Cornerstone"). (Docket No. 17). Cornerstone has not filed an opposition. For the reasons below, the Court **GRANTS** the Motion as to Davidson's ADA claim, but **DECLINES** to exercise supplemental jurisdiction over Davidson's remaining claims.

**I. BACKGROUND**

  Davidson is a California resident diagnosed with paraplegia, which substantially limits his ability to walk.[1] (Compl., Docket No. 1 ¶ 1). He must use a wheelchair when

---

[1] "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys.,*

traveling in public. (*Id.*). Cornerstone owns and/or operates the property at 3513 Whittier Boulevard in Los Angeles, California as a coin laundry (the "Business"). (*Id.* ¶ 2). The Business is open to the public and provides parking for its customers. (*Id.* ¶ 11). In September 2022, Davidson visited the Business and discovered that Cornerstone failed to maintain the parking space designated for persons with disabilities in compliance with state and federal standards. (*Id.* ¶ 13(a)–(f)). Namely, Davidson discovered that Cornerstone failed to provide proper van accessible space, failed to paint the ground as required, failed to mark the space with the International Symbol of Accessibility, failed to replace the required posted signage after it was rendered illegible by vandalism, failed to post the required signage at or above the minimum required height, and failed to post other required signage such as "Minimum Fine $250" and "Unauthorized Parking." (*Id.*). While Davidson wishes to return to the Business, his knowledge of these barriers deters him from visiting again. (*Id.* ¶ 14).

On January 23, 2023, Davidson filed this public accommodation action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 *et seq.*; California's Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code §§ 51 *et seq.*; the California Disabled Persons Act ("CDPA"), Cal. Civ. Code §§ 54, *et seq.*; and the California Health & Safety Code, §§ 19955, *et seq*. (*See generally id.*). He also brings a claim for negligence. (*Id.*). Davidson served the Complaint on Cornerstone on February 19, 2023. (Proof of Service, Docket No. 11). Cornerstone did not file an answer. Davidson requested default, which the Clerk of Court entered on May 26, 2023. (Docket No. 16). Davidson filed this Motion on June 28, 2023, requesting entry of default judgment against Cornerstone to include injunctive relief, damages under the Unruh Act, attorney's fees, and costs.

---

*Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (citation and quotation marks omitted). Facts that are not established by the pleadings or claims which are not well-pleaded, however, cannot support a default judgment. *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1393 (9th Cir. 1988).

## II. DISCUSSION

The Court finds that: (1) Davidson's Motion meets the threshold requirements for a motion for default judgment under Federal Rule of Civil Procedure 55(b); (2) this Court has subject-matter jurisdiction over the ADA claim; (3) there are compelling reasons for declining supplemental jurisdiction over the state claims; (4) the *Eitel* factors favor entry of default judgment on the ADA claim; and (5) Davidson is entitled to injunctive relief and $3,092 in attorney's fees and costs.

### A. **Rule 55(b) Requirements**

In the Central District of California, an application for default judgment must be accompanied by a declaration in compliance with Rule 55(b)(1) and include the following:

> (a) When and against what party the default was entered;
> (b) The identification of the pleading to which default was entered;
> (c) Whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative;
> (d) That the Servicemembers Civil Relief Act (50 U.S.C. App § 521) does not apply; and
> (e) That notice has been served on the defaulting party, if required by [Rule] 55(b)(2).

Local Rule 55-1.

Davidson's Motion and supporting materials state that: (a) default was entered against Cornerstone on May 26, 2023 (Decl. of Jason J. Kim ("Kim Decl."), Docket No. 17-2 ¶ 5); (b) default was entered as to the Complaint (*id.*); (c) Cornerstone is not an infant or incompetent person (*id.* ¶ 3); (d) the Servicemembers Civil Relief Act does not apply (*id.*); and (e) notice of the Motion was served on Cornerstone on June 28, 2023 (*id.* ¶ 6). Davidson thus meets the Rule 55(b) procedural requirements.

### B. **Jurisdiction Over ADA Claim**

The ADA is a federal law that prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages,

or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Under Title III of the ADA, "only injunctive relief is available" to a plaintiff—"[d]amages are not recoverable." *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002) (citing 42 U.S.C. § 12188(a)(1)).

The Court has subject-matter jurisdiction over Davidson's ADA claim under 28 U.S.C. §§ 1331 and 1343. Moreover, the Court has personal jurisdiction over Cornerstone because it has "certain minimum contacts with" California "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (quotation omitted). Specifically, Cornerstone owns and/or operates the laundromat in California that gives rise to Davidson's Complaint. (Compl. ¶ 2).

### C. Supplemental Jurisdiction Over State Claims

The Court declines to exercise supplemental jurisdiction over Davidson's four state claims for violation of the Unruh Act, violation of the CDPA, violation of the California Health & Safety Code, and negligence. Under 28 U.S.C. § 1367(a), a district court that has original jurisdiction over a claim "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." A district court is within its discretion to decline exercising supplemental jurisdiction where:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Id.* § 1367(c). The Supreme Court has said that the supplemental jurisdiction statute

"reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

Here, the Court finds there are exceptional circumstances surrounding the Unruh Act claim. Additionally, the Court finds that Davidson's state claims substantially predominate over his ADA claim. It therefore declines to exercise jurisdiction over all four of Davidson's state claims.

### 1. *The Unruh Act*

The Unruh Act provides that all persons in California, "no matter what their ... disability ... are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). A violation of an individual's rights under the ADA constitutes a violation of the Unruh Act. *Id.* § 51(f). The Unruh Act allows for recovery of monetary damages for each and every offense, "up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000)." *Id.* § 52(a). Here, Davidson seeks $4,000 in statutory damages under the Unruh Act.

"In 2012, in an attempt to deter baseless claims and vexatious litigation, California adopted heightened pleading requirements for disability discrimination lawsuits under the Unruh Act." *Velez v. Il Fornanio (Am.) Corp.*, No. 3:18-CV-1840-CAB (MDD), 2018 WL 6446169, at *6 (S.D. Cal. Dec. 10, 2018) (citing Cal. Civ. Proc. Code § 425.50). Under the heightened pleading requirements, a plaintiff alleging a "construction-related accessibility claim"[2] must allege, in a verified complaint, a

---

[2] "'Construction-related accessibility claim' means any civil claim in a civil action with respect to a place of public accommodation, including, but not limited to, a claim brought under Section 51, 54, 54.1, or 55, based wholly or in part on an alleged violation of any construction-related accessibility standard ...." Cal. Civ. Code § 55.52(a)(1).

5

number of specific facts concerning the claim. Cal. Civ. Proc. Code § 425.50.

In 2015, California imposed additional requirements to deter "high-frequency litigants" who "utilize[] court resources in actions arising from alleged construction-related access violations at such a high level that it is appropriate that additional safeguards apply so as to ensure that the claims are warranted." *Id.* § 425.55 (b)(1). A "high-frequency litigant" is defined as "[a] plaintiff who has filed 10 or more complaints alleging a construction-related accessibility violation within the 12-month period immediately preceding the filing of the current complaint alleging a construction-related accessibility violation." *Id.* § 425.55(b)(1). Attorneys may also be considered "high-frequency litigants." *Id.* § 425.55(b)(2).

In their complaints, high-frequency litigants filing in state court must now disclose (1) that they are high-frequency litigants, (2) "the number of complaints alleging a construction-related accessibility claim that [they have] filed during the 12 months prior to filing the complaint," (3) "the reason the individual was in the geographic area of the defendant's business," and (4) "the reason why the individual desired to access the defendant's business, including the specific commercial, business, personal, social, leisure, recreational, or other purpose." *Id.* § 425.50 (a)(4)(A)(i) –(iv). They must also pay an extra $1,000 filing fee. Cal. Gov't Code § 70616.5. A review of the docket reveals that Davidson is a high-frequency litigant.

The Court finds there are "exceptional circumstances" that present "compelling reasons for declining jurisdiction." By enacting restrictions on the filing of construction-related accessibility claims, California has expressed a desire to limit the financial burdens that California's businesses may face from claims for statutory damages and attorney's fees under the Unruh Act brought by serial litigants. By filing this action in federal court, Davidson has evaded these limits and claimed state law damages in a manner inconsistent with the state law's requirements. This situation, and the burden that the ever-increasing number of such cases poses to the federal courts,

present "exceptional circumstances" and "compelling reasons" that justify the Court's decision to decline to exercise supplemental jurisdiction over Davidson's Unruh Act claim in this action under 28 U.S.C. § 1367(c)(4). This finding is in line with a myriad of decisions over the past few years by many of the judges in this district. *See, e.g., Whitaker v. Mac*, 411 F. Supp. 3d 1108, 1116 (C.D. Cal. 2019); *Langer v. Mobeeus, Inc.*, No. 19-CV-2680-DMG (JCX), 2020 WL 641771, at *3 (C.D. Cal. Jan. 2, 2020); *Shayler v. JP Morgan Chase Bank*, No. 21-CV-865-PSG (AFMX), 2021 WL 3413320, at *1 (C.D. Cal. Mar. 8, 2021); *Soto v. Russi*, No. 22-CV-6229-PA (RAOX), 2022 WL 17222289, at *3 (C.D. Cal. Sept. 13, 2022); *Holland v. Chang*, No. 23-CV-743-MWF (MAAX), 2023 WL 4680361, at *3 (C.D. Cal. June 14, 2023).

In declining to exercise supplemental jurisdiction, the Court is restoring the balance Congress struck when it enacted the ADA and provided a private right of action for injunctive relief and an award of attorney's fees, but did not allow for the recovery of statutory damages.

### 2. All State Claims

Moreover, state claims substantially predominate in this case. In addition to the ADA claim, Davidson brings four state claims. Davidson's claims under the Unruh Act, the CDPA, and California's Health & Safety Code, as well as his claim for negligence, substantially predominate over the ADA claim. The claims in this case are similar to those in *Schutza v. McDonald's Corp.*, 133 F. Supp. 3d 1241 (S.D. Cal. 2015), in which the district court found that "[p]laintiff's three state-law claims [under the Unruh Act and CDPA, and for negligence] substantially predominate[d] over [p]laintiff's ADA claim." *Id.* at 1247. As the court in that case stated, "California has its own set of public accommodation accessibility standards that can provide the basis for liability for disability discrimination in addition to ADA standards." *Id.* The court additionally declined to exercise supplemental jurisdiction because, as here, "[p]laintiff's state-law claims provide more expansive remedies than [his] ADA claim,

and [p]laintiff is pursuing those remedies" by seeking damages unavailable under the ADA. *Id.; see also Fernandez v. Palencia*, No. 2:22-CV-02327-MEMF-PVCX, 2022 WL 16859742, at *4 (C.D. Cal. Sept. 9, 2022) (on default judgment motion, declining to exercise supplemental jurisdiction over Unruh Act claim in part because plaintiff "seeks damages in the amount of $4,000 … and as such, any potential monetary damages that he is awarded predominate over the injunctive relief sought on his ADA claim").

Therefore, the Court declines to exercise supplemental jurisdiction over Davidson's state law claims. Claims Two through Five of the Complaint are **DISMISSED** without prejudice.

### D. *Eitel* Factors

In deciding a motion for default judgment, a court must consider the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect[;] and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016) (citing *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986)). "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

#### 1. *Possibility of Prejudice to Plaintiff*

The first factor looks to whether the plaintiff will suffer prejudice if default judgment is not entered. *Eitel*, 782 F.2d at 1471–72. Taking the factual allegations of the Complaint as true, Davidson is a disabled person who would like to visit the Business again, but is deterred from doing so because it is not accessible. (Compl. ¶ 14). Davidson will be without legal recourse if default judgment is not granted

because Cornerstone failed to respond or otherwise participate in the lawsuit. *See, e.g.*, *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."). Accordingly, this factor weighs in favor of default judgment.

### 2. Merits of the Claim and Sufficiency of the Complaint

The next two factors analyze the merits of Davidson's claims and the sufficiency of the allegations in his Complaint. *Eitel*, 782 F.2d at 1471–72. The Ninth Circuit has suggested that these two factors require a plaintiff to "state a claim on which the [plaintiff] may recover." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). To state a claim for violation of the ADA, Davidson must show that "(1) [he] is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of [his] disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).

First, a person who has "a physical or mental impairment that substantially limits one or more major life activities" is disabled under the ADA. 42 U.S.C. § 12102(1)(A). Davidson is paraplegic and requires a wheelchair to get around in public. (Compl. ¶ 1). He therefore qualifies as a person who is "disabled within the meaning of the ADA."

Second, Cornerstone is a private entity that operates the Business as a laundromat. (*Id.* ¶ 2). Laundromats are expressly defined as places of public accommodation under 42 U.S.C. § 12181. The second prong is therefore also satisfied.

Third, and finally, under Title III of the ADA, "a place of public accommodation discriminates on the basis of disability by 'fail[ing] to remove architectural barriers' … where removal is 'readily achievable.'" *Langer v. Kiser*, 57 F.4th 1085, 1101 (9th Cir. 2023) (quoting 42 U.S.C. § 12182(b)(2)(A)(iv)). Moreover, "[t]he corresponding regulation lists '[c]reating designated accessible parking spaces' as one example of

'readily achievable' steps to remove architectural barriers." *Id.* (quoting 28 C.F.R. § 36.304(b)(18)). Davidson has shown that the Business's "designated accessible parking space" is not actually accessible because it fails to meet federal and state requirements for accessible spaces by, *e.g.*, failing to meet the minimum width requirement for access aisles (Compl. ¶¶ 21, 23 (citing 1991 ADA Standards § 4.1.2(5)(b))) and failing to display adequate, legible signage and symbols showing the spot is designated only for those with disabilities (*id.* ¶¶ 23–28). Because Davidson has shown that Cornerstone failed to remove an architectural barrier where doing so was readily achievable, he has also satisfied the third prong for an ADA claim.

Davidson's Complaint is therefore sufficient to show he would likely prevail on the merits of his ADA claim, and the second and third *Eitel* factors weigh in favor of default judgment.

### 3. Sum of Money at Stake

The fourth *Eitel* factor "examines the amount of money at stake in relation to the seriousness of a defendant's conduct." *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012). Here, Plaintiff seeks an award of $4,000 in statutory damages under the Unruh Act, $2,515 in attorney's fees, and $577 in costs. Given that the Court declines to exercise supplemental jurisdiction over the Unruh Act claim, the total sum at stake is $3,092 in costs and fees. (Mot. at 2). As discussed in detail below at section II.E, *supra*, the Court finds this amount to be reasonable. This factor weighs in favor of default.

### 4. Possibility of Dispute Concerning Material Facts

As discussed above, since Cornerstone has not answered or otherwise appeared in this action, the allegations in the Complaint are presumed to be true. *See* n.1, *supra*. Additionally, Cornerstone has not moved to set aside the default. Therefore, the possibility of a factual dispute is remote at best. This factor weighs in favor of default judgment.

### 5. *Excusable Neglect*

The sixth *Eitel* factor considers whether a defendant's failure to respond could constitute excusable neglect. This factor favors entry of default judgment where "the defendant has been properly served…." *Wecosign*, 845 F. Supp. 2d at 1082. Here, Davidson retained a process server and properly served Cornerstone on February 19, 2023. (Proof of Service). Despite being properly served, Cornerstone has neither made an appearance in this matter nor challenged the entry of default. Accordingly, this favor weighs in favor of default judgment.

### 6. *Policy Favoring Decisions on Merits*

The seventh factor "takes into account the strong public policy in favor of deciding cases on the merits." *Langer v. Peykar*, No. CV 18-1919-R, 2018 WL 10072162, at *3 C.D. Cal. Aug. 22, 2018). That said, the "mere existence" of Fed. R. Civ. P. 55(b) indicates that the "preference" for decisions on the merits is not dispositive. *PepsiCo*, 238 F. Supp. 2d at 1178. Thus, even though this factor always weighs against default judgment, it does not preclude entry of default judgment.

### E. **Relief**

Davidson seeks injunctive relief, statutory damages, attorney's fees, and costs.

### 1. *Injunctive Relief*

The ADA provides for injunctive relief that "include[s] an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities …." 42 U.S.C. § 12188. Davidson requests an order requiring Cornerstone to bring the Business parking lot into compliance with ADA requirements. Accordingly, the Court **ORDERS** Cornerstone to remove all barriers to accessibility in the parking lot of the Business.

### 2. Damages

Davidson seeks $4,000 in damages under the Unruh Act. Because the Court declines to exercise supplemental jurisdiction over Davidson's Unruh Act claim, it **DENIES** Davidson's request for damages.

### 3. Attorney's Fees

Davidson requests that the Court affix $2,515 in attorney's fees under 42 U.S.C. § 12205. (Mot. at 2). In ADA cases where the prevailing party files a request to affix fees, the court must award a "reasonable" fee calculated by the lodestar approach. *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1158–59 (9th Cir. 2018). The lodestar is equal to "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 1158 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

An itemized billing statement shows that counsel for Davidson spent 3.8 hours on this matter at a rate of $500 per hour, while a paralegal spent 4.1 hours on this matter at a rate of $150 per hour. (Kim Decl., Exh. A). There is nothing to indicate that either the hours worked on the matter or the attorney's and paralegal's hourly rates are unreasonable. The Court therefore **GRANTS** $2,515 in attorney's fees.

### 4. Costs

Finally, Davidson requests $577 in costs under 42 U.S.C. § 12205. (Mot. at 2). That amount includes $402 in filing fees, $60 in gas and mileage reimbursement, $45 for the purchase of the Business's deed, and $70 for service of process. (Kim Decl., Exh. A). The Court **GRANTS** Davidson's requested $577 in costs.

## III. CONCLUSION

For the reasons stated above, the Court declines to exercise supplemental jurisdiction over Davidson's state law claims and **DISMISSES** those claims without prejudice. The Court exercises jurisdiction only over Davidson's ADA claim. On that claim, the Court **GRANTS** Davidson's Motion for Default Judgment and **ORDERS**

1 | Defendant Cornerstone to bring the Business's parking lot into compliance with the
2 | ADA.  Finally, the Court **GRANTS** Davidson's requests for attorney's fees and costs
3 | in the amount of $3,092.

**IT IS SO ORDERED.**

Dated:  October 23, 2023

_____
HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE

13